JACOB PUZIO, PLAINTIFF, v. NEW JERSEY MANUFAC-
TURERS INSURANCE COMPANY, DEFENDANT.

Passaic County — District Court

January 26, 1979.

*Mr. William Sellinger* for plaintiff.

*Mr. Ross D. London* for defendant (*Messrs. Connell, Foley & Geiser,* attorneys).

SAUNDERS, J. S. C. (temporarily assigned). The issue presented by the facts of this case is one which has not been the subject of a reported decision in this State, but is one

which must constantly arise under the "No-fault" insurance law. Is an insurance carrier, in making payments pursuant to its income continuation benefits policy provision, entitled to deduct an amount equal to the benefits collectible under a private temporary disability benefit plan approved by the State?

The issue has been submitted to the court on an agreed stipulation of facts. Plaintiff, an employee of Public Service Electric & Gas Co. (Public Service), was injured in an auto accident as a result of which he incurred lost wages for a period commencing October 1, 1976 to December 27, 1976. Public Service subscribed to a private disability plan that had been approved by the New Jersey Division of Employee Security pursuant to *N. J. S. A.* 43:21–32. In accordance with the statute, the benefits payable are equal to or exceed state benefits for temporary disability. Plaintiff, by the terms of this plan, received 100% of regular salary during the period of disability.

At the time of the accident plaintiff was covered for personal injury protection (PIP) under a policy of insurance with New Jersey Manufacturers Ins. Co. (NJM), defendant in this action. The policy provides the coverage mandated by *N. J. S. A.* 39:6A–1 *et seq.* All medical bills incurred by plaintiff have been paid by defendant. Plaintiff was entitled to income continuation benefits in the amount of $1220 for his period of disability. Plaintiff received temporary disability benefits amounting to $1193.13. Defendant paid plaintiff $26.87.

It is plaintiff's position that because these benefits were conferred under a private plan, they are not subject to the collateral source deduction of *N. J. S. A.* 39:6A–6.

The Legislature enacted the Temporary Disability Benefits Law, *N. J. S. A.* 43:21–25 *et seq.,* to provide coverage to those working individuals disabled by accident or illness that was non-job related and, therefore, not compensable. *Janovsky v. American Motorists Ins. Co.,* 11 *N. J.* 1 (1952). In the title of the act its purpose is specifically stated: " 'An

Act to provide for the payment of disability benefits to certain persons with respect to accident and sickness not compensable under the workmen's compensation law.' "

"The source for temporary disability benefits is an approved private plan or the State Plan for which the State Treasurer is trustee and administrator." *Frazier v. Liberty Mut. Ins. Co.*, 150 *N. J. Super.* 123, 142 (Law Div. 1977). Any private plan must meet the approval of the Division of Employee Security. Its benefits must equal or exceed the benefits of the state plan, and no greater amount is required to be paid to the employee than under the state plan. *N. J. S. A.* 43:21–32(d). In accordance with *N. J. A. C.* 12:18–2.2 and 12:18–2.10(a), coverage under one plan precludes coverage under the other. Protection against loss of wages is the purpose of the statute. The purpose is controlling and "pervades both the State and private plans alike." *Polls v. Barrett Div., Allied Chem. & Dye Corp.*, 48 *N. J. Super.* 554, 560 (App. Div. 1958).

In 1972 the Legislature enacted the Automobile Reparation Act. "The Legislature had four purposes in mind in enacting no-fault legislation: (1) to increase the number of persons covered; (2) to reduce the costs of auto insurance; (3) to increase the availability of coverage, and (4) to reduce litigation and court time." *Frazier v. Liberty Mut. Ins. Co., supra* 150 *N. J. Super* at 133. As the court points out in *Frazier,* the device to reduce the new burden on insurance carriers is the "statutory right to [deduct] for collateral sources." *Id.*

*N. J. S. A.* 39:6A–6 provides:

The benefits provided in section 4a., b., c., d., and e. and section 10, shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workmen's compensation insurance, employees temporary disability benefit statutes and medicare * * * shall be deducted from the benefits collectible under section 4a., b., c., d., and and e. and section 10.

Section 4(b) provides for payment of lost income, subject to a maximum payment of $100 weekly. It is from these income continuation benefits that the PIP carrier is permitted to deduct payments received from sources deemed collectible. *Tillman v. Allstate Ins. Co.,* 154 *N. J. Super.* 206 (Ch. Div. 1977).

The statute explicitly provides for the deductibility of benefits collectible from three sources: workmen's compensation insurance, employee temporary disability benefits and Medicare. "We read this provision as providing a statutory right to a deduction that belongs to the PIP carrier." *Solimano v. Consolidated Mut. Ins. Co.,* 146 *N. J. Super.* 393, 397 (Law Div. 1977). The intent of the Legislature is to preclude double recovery. The expression of this intent may be found in every case with issues pertaining to the operation of *N. J. S. A.* 39:6A–1 et seq.

One must begin with the basic concept that the duplication of benefit payments for the same out-of-the-pocket expenses satisfies no purpose. [Iavicola, *No Fault and Comparative Negligence in New Jersey,* 55–56 (1973)]

Plaintiff's claim that his temporary disability benefits received from the state-approved private plan are nondeductible works contrary to the clear intent of the statute.

In *Janovsky v. American Motorists Ins. Co., supra,* plaintiff was injured in a work-related accident. Pending the determination of his claim under workmen's compensation he made a claim for temporary disability benefits, and was paid by the defendant carrier, an insurer of a private disability plan. Issues arose after the awarding of a workmen's compensation claim with regard to the amounts reimbursable to the temporary disability carrier. The court held (11 *N. J.* at 5) that the employee was entitled to "benefits under either the compensation law, or the benefits law, but not under both." If payment is "dependent on the outcome of contested proceedings, immediate payment to help tide the worker over during his inability to work should be permis-

sible \* \* \* with full reimbursement from any award subsequently rendered in the compensation proceeding". *Id.* The same position has been taken with regard to PIP payment and collectible benefits. *Bernick v. Aetna Life and Cas. Co.,* 158 *N. J. Super.* 574, 580 (Cty. Ct. 1978). Our Supreme Court in *Janovsky* made no distinction between benefits paid pursuant to state or private plan.

In view of the legislative intent to maximize access to benefits and minimize costs, plaintiff's claim must fail. The benefits he received are not in the nature of sick leave or hospitalization benefits, which are clearly collateral sources and in some circumstance may be a permitted duplication payment. *Bernick v. Aetna Life & Cas. Co., supra* at 582. The benefits in this case, giving plaintiff 100% of his regular salary, are temporary disability benefits. *N. J. S. A.* 39 :6A–6 does not identify the benefits as "state plan benefits"; rather it uses the term "employee's temporary disability benefit statutes."

In order to ascertain the meaning of these words, recourse must be had to the purpose for which the statute was enacted and the mischief it was intended to eliminate, and all parts of the statute must be read so they are in alignment with the intent of the entire act. [*Thomas v. Board of Review,* 43 *N. J.* 549, 552 (1965)]

The "mischief" aimed at was high costs occasioned by double recoveries.

The court in *Frazier v. Liberty Mut. Ins. Co., supra,* classified the three deductible sources:

The three collateral sources are all forms of social insurance characterized by compulsory participation, prescribed benefits, governmental supervision and equalized costs for participants. [150 *N. J. Super.* at 134]

The private temporary disability benefits plan meets each of these characterizations. The state plan provides the minimum coverage for employees. The legislative intent welcomes and encourages the business community to make

further provisions for its employees. No-fault insurance provides minimum coverage for injured parties. The legislative intent was to provide that coverage, but not overburden insurance carriers or raise insurance costs. Therefore, the Legislature took account of the already existing benefit systems and interrelated the statutes to provide a fair solution for all parties involved. To find otherwise would negate the efficiency of *N. J. S. A.* 39:6A-6.

For the above reasons, judgment is granted to defendant.